UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------X    Docket No.:

ANEES HASNAIN AND LUIS MEJIA,

                                           Plaintiffs,                    **COMPLAINT**

           -against-
                                                                          **PLAINTIFF DEMANDS**
THE CITY OF NEW YORK, NYPD POLICE OFFICER NICHOLAS    **A TRIAL BY JURY**
ALBERGO (TAX 954471), NYPD POLICE OFFICER ALLYSON
ECHAVARRIA (TAX 951703), AND NYPD MEMBER DOES 1-9,

                                           Defendants.

-------------------------------------------------------------------------------X

        Plaintiffs, ANEES HASNAIN AND LUIS MEJIA, by their attorney, Elena L. Cohen of

Cohen & Green PLLC, hereby complain of the defendants, upon information and belief, as

follows:

### PARTIES, VENUE AND JURISDICTION

1.  At all times mentioned herein, plaintiffs, ANEES HASNAIN AND LUIS MEJIA, were adult

    residents of New York County, in the City and State of New York.

2.  At all relevant times mentioned herein, defendant, City of New York ("New York City"), was

    and is a municipal corporation duly organized and existing under and by virtue of the laws of

    the State of New York and acts by and through its agencies, employees and agents, including,

    but not limited to, the New York City Police Department ("NYPD"), and their employees.

3.  At all times hereinafter mentioned, defendant, NYPD POLICE OFFICER NICHOLAS

    ALBERGO (TAX 954471), was an adult man employed by the City of New York as a member

    of the NYPD assigned to the NYPD Strategic Response Group 3 in Brooklyn. He wore a blue

    NYPD uniform and NYPD riot gear such as a mask and a helmet. Defendant ALBERGO is

    sued herein in his official and individual capacities.

1

4. At all times hereinafter mentioned, defendant, NYPD POLICE OFFICER ALLYSON ECHAVARRIA, née DAVILA (TAX 951703) was an adult woman employed by the City of New York as a member of the NYPD assigned to the NYPD Strategic Response Group. Defendant Davila is sued herein in her official and individual capacities.

5. At all times hereinafter mentioned, defendants, NYPD Member Does 1-9 were adults wearing NYPD uniforms. Defendant Albergo and Does 1-7 are referred to herein as the Mejia Defendants. Does 8-9 are referred to herein as the Hasnain Defendants. All nine Does appeared to be men, appeared to be white and/or Latino, and are depicted in the three below screenshots from the incident giving rise to this lawsuit:







6. As depicted, one of the Doe Defendants was wearing an NYPD uniform with a white shirt. The other Doe Defendants were wearing blue NYPD uniforms.

7. The Doe defendants are sued herein in their official and individual capacities.

8. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

9. Venue is proper pursuant to 28 U.S.C. § 1391, et seq., in the Southern District of New York, where plaintiffs and defendant City of New York reside, and where the majority of the actions complained of herein occurred.

10. This action has been initiated within three years of the accrual of plaintiffs' claims pursuant to federal law.

**<u>RELEVANT FACTS</u>**

11. On September 13, 2021, at about 6:00 p.m., plaintiffs were lawfully present at a protest at or around the Fifth Avenue entrance of the Metropolitan Museum of Art, near East 81st Street and Fifth Avenue, in the County, City, and State of New York.

12. At this time, the Doe Defendant wearing a white shirt pointed at Plaintiff Hasnain.

13. Following this, Defendant Albergo approached Plaintiff Hasnain and began violently grabbing her head.

14. The Hasnain Defendants then grabbed Hasnain and slammed her to the ground, causing her to lose consciousness and sustain a concussion.

15. Plaintiff Hasnain was wearing a bicycle helmet at the time, and the Hasnain Defendants slammed her to the ground with such force that she was concussed through the helmet.

16. At about the same time, the Mejia Defendants began attacking plaintiff Mejia by grabbing him, pulling him in multiple directions, and dragging him to the ground.

17. Specifically, Defendant Albergo injured plaintiff Mejia's left arm and elbow by forcing Plaintiff Mejia's arm into a straight position, and Albergo used his arm to yank at Plaintiff Mejia's extended elbow.

18. The Hasnain Defendants then handcuffed plaintiff Hasnain without any justification and applied the handcuffs to plaintiff Hasnain excessively tightly.

19. One of the Mejia Defendants handcuffed plaintiff Mejia without any justification and applied the handcuffs to plaintiff Mejia excessively tightly.

20. Defendants detained and arrested plaintiffs without consent, probable cause, or lawful justification.

21. Defendants used unreasonable and excessive physical force in detaining and arresting plaintiffs.

22. As a result of the force used by defendants, Plaintiff Mejia sustained pain and injuries to his left arm and elbow.

23. As a result of the force used by defendants, Plaintiff Hasnain sustained pain and injuries including loss of consciousness and a concussion.

24. None of the Defendants read plaintiffs their rights.

25. Rather than issuing Plaintiff Mejia a summons or other legal process on the street, NYPD officers loaded Plaintiff into a prisoner transport vehicle and took Plaintiff to the 28th Precinct, where Plaintiff remained in police custody.

26. Rather than issuing Plaintiff Hasnain a summons or other legal process on the street, NYPD officers loaded Plaintiff into a prisoner transport vehicle and took Plaintiff to the 28th Precinct where Plaintiff remained in police custody.

27. Plaintiffs were in NYPD custody for approximately 5 to 7 hours.

28. Because NYPD officers arrested plaintiffs in connection with a protest, they subjected plaintiffs to unreasonable and lengthy NYPD large-scale arrest processing, to which other similarly situated people detained by the NYPD for the same offense(s) with which plaintiffs were charged outside of the protest context are not subjected.

29. As a result, that arrest processing unjustifiably and unreasonably lengthened plaintiffs' detention; curtailed and prevented plaintiffs from exercising plaintiffs rights to speech, association, and assembly, and to petition the government; cast a chill on plaintiffs desire to

participate in such protected expression in the future; and otherwise injured and damaged Plaintiff.

30. NYPD officers unlawfully searched each plaintiff's person.

31. During Plaintiff's time in custody, no NYPD officer offered Plaintiff a phone call. And, as the arrest processing procedures the NYPD applied to Plaintiff's arrest because it was made in connection with a protest did not allow for legal counsel or anyone else to contact Plaintiff, or communicate with NYPD officers about Plaintiff's arrest or arrest processing status, no one could locate or contact Plaintiff while Plaintiff was in custody.

32. Plaintiff Hasnain was held in a small cell with approximately 5 other arrestees. The cell was crowded, and not designed to house this many people at one time.

33. After approximately 5 to 7 hours, Defendant Davila issued Plaintiff Hasnain two summonses based on false allegations that she knew to be false when she issued the summonses.

34. Plaintiff Hasnain's charges were resolved in her favor when Defendant Davila failed to file the summonses with the court.

35. After approximately 7 hours, Defendant Mejia was released from custody.

36. Defendant Mejia's charges were resolved in his favor on grounds consistent with his innocence when he acceded to an ACD.

37. Plaintiffs were unlawfully deprived of meaningful access to basic necessities for an extended period, and subjected to filthy, crowded, and unsanitary conditions of confinement, while in NYPD custody.

38. Upon information and belief, Members of the NYPD created official NYPD paperwork relying on fabricated evidence, including about purported observations of plaintiffs' alleged pre-arrest

conduct, and/or forwarded such fabricated evidence to prosecutors and/or initiated charges against plaintiffs, relying on fabricated evidence and without probable cause.

39. At no time did defendants have probable cause to seize, detain or arrest the plaintiffs, nor to use any force on plaintiffs, nor was it reasonable for the defendants to believe that such cause existed.

40. At no time did any of the defendants, or any other member of the NYPD, take any steps to intervene in, prevent, or otherwise limit the heretofore conduct engaged in by their fellow officers.

41. That at all times relevant herein, the defendants were acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

***NYPD's Policies and Practices Relating to Dispersal Orders and Opportunity to Comply***

42. Defendants did not issue Plaintiffs any order before they detained and assaulted them.

43. Upon information and belief, there is virtually no NYPD training – and certainly no meaningful NYPD training - focusing on how to utilize the tactics taught at the academy and in in-service training without infringing on the constitutional rights of protesters, such as how to make probable cause determinations or the requirements of providing an alternative avenue of protest, meaningful time, and a path of egress when issuing a dispersal order, and the like.

44. Thus, Plaintiffs were given no meaningful opportunity to comply with a(n unlawful) dispersal order because it is the policy, practice, and effect of NYPD trainings that officers frequently do not give such opportunities.

45. The City and the NYPD have been sued repeatedly for the failure to provide meaningful opportunities to comply with dispersal orders, including (but not limited to):

a. *Peat v. City of New York,* No. 12 Civ. 08230 (S.D.N.Y.), fifteen plaintiffs, during the Occupy Wall Street protests, were arrested on January 1, 2012, on the sidewalk in the East Village and settled a case with Defendant City of New York for $598,000. The settled complaint alleged that plaintiffs were peacefully and lawfully protesting when executive members of the NYPD blocked their path on the sidewalk, encircled them on three sides and a building line on the fourth side. The NYPD made dispersal announcements without providing sufficient time or a path of egress as members of the scooter task force blocked the protesters path of egress.

b. *Case v. City of New York,* 14-cv-9148 (S.D.N.Y.), complaining of NYPD's policy and practice of failing to ensure that constitutionally meaningful and adequate dispersal orders and opportunities to disperse are given prior to effecting arrests in connection with First Amendment assemblies. *Case* is now trial-ready, including on the opportunity-to-disperse claims. In the decision denying summary judgment in *Case*, the Court also found that the City had notice of the failure to train alleged here for *Monell* purposes. *See Case v. City of New York*, 408 F. Supp. 3d 313, 329-30 (S.D.N.Y. 2019).

c. *Dinler v. City of New York,* 04-cv-7921 (S.D.N.Y.), granting plaintiffs summary judgment (decision at 2012 WL 4513352, 2012 U.S. Dist. LEXIS 141851) on claims for unlawful arrest where no meaningful opportunity to comply with a dispersal order was given.

46. As noted above, in *Case*, Judge Torres concluded that the same policy and training failures alleged here presented an issue for trial on whether NYPD's policies gave rise to *Monell*

liability for "fail[ure] to train officers with respect to providing (1) adequate dispersal notice and (2) a meaningful opportunity to comply with such notice." 408 F. Supp. 3d at 329.

47. As also referenced in *Case* (408 F. Supp. 3d at 329, *citing* Pl. MOL (ECF No. 136) at 34-37), the *only* time the topic of opportunity to disperse comes up in NYPD's training is in a factual summary of a case, appearing in a 1971 Legal Department Bulletin.

48. That is, upon information and belief, there is no training provided to NYPD officers on ensuring protesters are provided a meaningful opportunity to comply with orders to disperse.

49. Upon further information and belief, the NYPD and City do not train officers on (1) informing demonstrators that they must move or why; how many warnings to give before taking enforcement action; (2) what constitutes a meaningful time within which to comply with a dispersal order or the length of time to give people to comply; or (3) the need to give a meaningful opportunity to comply (i.e., a route through which to disperse). *See, e.g., Case*, ECF No. 136 at 34-35.

50. And, according to the Corporation Counsel itself, the NYPD does not demonstrate a consistent commitment to reviewing and responding to external critiques regarding the policing of protests.

51. Indeed, upon information and belief, there have been no protest-related after action reviews undertaken between the 2004 Republican National Convention and until the events of the George Floyd protest – despite numerous lawsuits, judgments, and settlements on the issue.

52. This is in part because of other problematic policies and practices. For example, in a deposition in *Packard v. City of New York,* 15-cv-7130 (S.D.N.Y.), the City of New York testified that in regards to protest police training it did not review (i) decline to prosecute decisions, (ii) conviction conversion rates, or (iii) allegations and settlements in lawsuits relating to protest.

53. That is, Defendant City apparently does not even review allegations in lawsuits filed by protesters claiming to be falsely arrested during protests in reviewing their policies, in effect taking the position that there is nothing to be learned from lawsuits and settlements.

54. For example, in a 2017 deposition, Defendant City could identify no impact litigation against Defendant City between 2000 and 2011 had on Defendant City's relevant policies, practices, and customs.

55. Thus, in sum, Defendants NYPD and the City have a policy and practice of failing to provide meaningful opportunities to comply with dispersal orders at protests, and that policy resulted in Plaintiffs' arrest and injuries.

**FIRST CAUSE OF ACTION**
**(Section 1983 False Arrest Claim Against the Individual Defendants)**

56. Plaintiffs hereby reallege and incorporate all of the preceding paragraphs as though they were fully set forth herein.

57. The individual defendants willfully and intentionally seized, searched, detained, and arrested plaintiffs, and caused them to be imprisoned, without probable cause, and without a reasonable basis to believe such cause existed.

58. Plaintiffs had not been engaged in any criminal conduct, nor were they engaged in any conduct that could reasonably be viewed as criminal nor a basis to justify their arrest.

59. Despite the absence of sufficient legal cause, plaintiffs were arrested and jailed.

60. By so doing, the individual defendants subjected plaintiffs to false arrest and imprisonment, and thereby violated and aided and abetted in the violation of plaintiffs' rights under the Fourth Amendment of the United States Constitution.

61. By reason thereof, the individual defendants have violated 42 U.S.C §1983 and caused plaintiffs to suffer the deprivation of their liberty, loss of their constitutional rights, physical

injuries, and mental anguish.

## SECOND CAUSE OF ACTION
### (Section 1983 Denial of a Fair Trial Claim Against the Individual Defendants)

62. Plaintiffs hereby reallege and incorporate by reference all of the preceding paragraphs as though they were fully set forth herein.

63. The individual defendants willfully and intentionally fabricated evidence by falsely memorializing claims to have witnessed plaintiffs engaging in criminal or unlawful activity, and then forwarded these materially false claims to the New York County District Attorney's Office in order to justify the arrest of plaintiffs, and to justify, bringing about and cause plaintiff to be deprived of their liberty and to be criminally prosecuted.

64. By so doing, the individual defendants subjected the plaintiff to denial of a fair trial and violation of their right to due process by fabricating evidence and otherwise providing prosecutors with a materially false and misleading version of events, and thereby violated plaintiff's rights under the Fourth, Sixth, and Fourteenth Amendments of the United States Constitution.

65. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer the deprivation of their liberty, loss of their constitutional rights, physical injuries, and mental anguish.

## THIRD CAUSE OF ACTION
### (Section 1983 Excessive Force Claim Against the Individual Defendants)

66. Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

67. As a result of the foregoing, defendants subjected plaintiff to excessive force, in part, by causing their body to slam to the ground, and causing their to suffer injuries, with no legal basis, justification or excuse.

68. As a result of the defendants' conduct, the plaintiff was subjected to a level of force by the defendants in excess of what was reasonable under the circumstances.

69. As a result of the foregoing, plaintiff's liberty was restricted and they were put in fear for their physical safety without probable cause or any legal justification, and they were physically injured.

## FOURTH CAUSE OF ACTION
(First Amendment Retaliation through 42 U.S.C. Section 1983 and related New York

State Constitutional Provisions against All Defendants)

70. "[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions … for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006); Dorsett v. Cty. of Nassau, 732 F.3d 157, 160 (2d ll Cir. 2013); *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (First Amendment prohibits "adverse governmental action taken against an individual in retaliation" for protected activities.).

71. As a result, even some government actions that would be otherwise lawful become prohibited if in response to protected speech or petition. "Because government retaliation tends to chill an individual's exercise of his First Amendment rights, public officials may not, as a general rule, respond to an individual's protected activity with conduct or speech even though that conduct or speech would otherwise be a lawful exercise of public authority." *Bd. of County Comm'rs v. Umbehr*, 518 U.S. 688 (1996). The First Amendment thus bars officials' actions where they "caused [the speaker] to suffer an injury that would chill a person of ordinary

firmness from continuing to engage in that activity" and were "substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *See Keenan*, 290 F.3d at 258.

72. The right to protest is at the heart of the First Amendment, as is the right to publicly and loudly criticize public officials.

73. The Defendants actions, collectively and through *respondeat superior*, constitute illegal First Amendment retaliation in that (1) Plaintiff was exercising a right protected by the First Amendment; (2) the use of excessive force, arrest, and imposition of criminal charges, as well as the falsification of charges, and the denials of process, were motivated or substantially caused by the exercise of that right; and (3) those actions caused injury. *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).

74. Even in the generally fraught criminal context, merely "[b]eing subjected to criminal charges is a cognizable concrete harm." *Higginbotham v. City of New York*, 2015 WL 2212242, at *11 (SDNY May 12, 2015). Here, Sergent's protected speech was the but-for cause of the Defendants use excessive force and false arrest against Plaintiff.

75. The Defendant City of New York is liable under this claim under *respondeat superior* for failure to train member of the NYPD and the Defendants in the lawful and proper discharge of their professional obligations including, but not limited, the requirement that they not violate the constitutional rights of citizens.

76. By reason thereof, Defendants have caused Plaintiff to suffer emotional and physical injuries, mental anguish, the loss of their constitutional rights, and unlawful incarceration.

**FIFTH CAUSE OF ACTION**
**(Section 1983 *Monell* Claim Against the Municipal Defendant)**

77. Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

78. Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and/or over the NYPD.

79. Defendant City of New York had actual or constructive knowledge that there was inadequate supervision over and/or within the NYPD with respect to its members' abuse of their authority, abuse of arrest powers, excessive force, and fabrication of evidence, and other blatant violations of the United States Constitution and the rules and regulations of the NYPD.

80. Despite ample notice of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put place to reasonably ensure that NYPD members engaged in police conduct in a lawful and proper manner, including their use of their authority as law enforcement officers with respect to the general public, including, and specifically, the plaintiff herein.

81. Defendant City of New York deliberately and intentionally chose not to take action to correct the chronic, systemic, and institutional misuse and abuse of police authority by its NYPD employees, and thereby deliberately and intentionally adopted, condoned, and otherwise created through deliberate inaction and negligent supervision, an NYPD policy, practice, and custom of utilizing illegal and impermissible searches, arrests, and detentions, excessive force, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond the plaintiff's arrest.

82. The acts complained of herein are a direct and proximate result of the failure of the City of New York and the NYPD properly to select, train, supervise, investigate, promote and discipline police and correction officers and supervisory officers.

83. The failure of the City of New York and the NYPD properly to select, train, supervise, investigate, promote and discipline police and correction officers and supervisory officers constitutes gross and deliberate indifference to unconstitutional conduct by those officers.

84. The official policies, practices and customs of the City of New York and the NYPD alleged herein violated plaintiff's rights guaranteed by 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the Constitution of the United States.

85. All of the acts and omissions by the individual defendants described above were carried out pursuant to overlapping policies and practices of the municipal defendant in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures, and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD.

86. Therefore the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York was deliberately indifferent to the risk that the inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of the plaintiff's rights in particular.

87. By reason thereof, the municipal defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of their constitutional rights.

**SIXTH CAUSE OF ACTION**
**(Civil Rights Violations Pursuant to New York State Law**
**Against the Individual and Municipal Defendants)**

88. Plaintiff repeats the allegations contained in each of the foregoing paragraphs as though stated

fully herein.

89. Plaintiff was subjected to false arrest, excessive force, denial of due process and fair trial, through the defendants' use of unreasonable force, fabricated evidence and the making of false statements.

90. At no time did defendants have any legal basis for arresting plaintiff, subjecting their to prosecution, or commencing criminal process against her, nor was there any reasonable basis to believe said conduct set forth herein was lawful, reasonable, or otherwise appropriate.

91. The defendants are therefore liable under New York law to plaintiff for false arrest, excessive force, denial of due process and fair trial.

92. By reason thereof, defendants have caused plaintiff to suffer emotional and physical injuries, mental anguish, the loss of their constitutional rights, and unlawful incarceration.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiff demands judgment against the individual defendants and the City of New York as follows:

    i.      actual and punitive damages against the individual defendants in an amount to be determined at trial;

    ii.      actual damages in an amount to be determined at trial against the City of New York;

    iii.      statutory attorney's fees pursuant to, inter alia, 42 U.S.C. §1988 and New York common law, disbursements, and costs of the action; and

    iv.      such other relief as the Court deems just and proper.

Dated: New York, New York
August 16, 2024

ELENA L. COHEN

/s/

By: _____

Cohen & Green PLLC
1639 Centre Street, Suite 216
Ridgewood, NY 11385
Tel.: 929-888-9480
elena@femmelaw.com
