THE CITY OF NEW YORK

## LAW DEPARTMENT

STEVEN BANKS
*Corporation Counsel*

100 CHURCH STREET
NEW YORK, N.Y. 10007

JONATHAN HUTCHINSON
*Senior Counsel*
Tel.: (212) 356-2410
Fax: (212) 356-3509
jhutchin@law.nyc.gov

April 9, 2026

**VIA ECF**
Honorable Jennifer L. Rochon
United States District Court for the Southern District of New York

     Re:  Anees Hasnain v. The City of New York et. al., 24 Civ. 6221 (JLR)

Your Honor:

   I am a Senior Counsel in the Office of Steven Banks, Corporation Counsel of the City of New York, and the attorney representing the defendants in the above-referenced matter. Defendants respectfully write in response to plaintiff's April 6, 2026 letter. See ECF No. 72.

   By way of background, during the March 26, 2026 court conference, the parties were ordered to meet and confer regarding any remaining discovery disputes. On March 30, 2026, the parties conferred over a telephone call and plaintiff reiterated her requests for certain discovery materials (discussed further below), offering no compromises and refusing to tailor her demands to the needs of the case. Defendants informed plaintiff that additional time was needed to provide their positions on her requests and the parties agreed to meet and confer again, before bringing any disputes to the Court. On April 6, 2026, plaintiff's counsel called me at 9:45 a.m., maintained that they had mere minutes to speak before boarding a plane, and represented that they would be unable to meet and confer later in the week. During that call, plaintiff unilaterally cancelled the two depositions scheduled for this week[1] and defendants outlined their positions on all but one category of documents – those pertaining to NYPD policies in effect at the time of the incident. I informed plaintiff that I needed a day or two to clarify with the NYPD whether it could obtain the policy documents sought and how quickly they could be produced but, in her haste to claim defendants' non-compliance with the Court's March 26, 2026 Orders, plaintiff filed her letter regarding discovery minutes later. As previously noted and as further explained below, plaintiff's letter contains numerous misrepresentations concerning defendants' positions.

   As an initial matter, defendants respectfully submit that plaintiff's outstanding discovery requests, which are addressed more specifically below, are unduly burdensome and not proportional to the needs of the case, particularly in light of the objective video evidence and the sheer number of defendants improperly named in this lawsuit.[2] Here, although plaintiff asserts a host of claims and names twelve individual defendants, at its heart, this case is about the alleged

---

[1] Plaintiff's counsel had previously represented that, although they would be on trial this week, other members of their firm could take the depositions, even if outstanding documents remained to be produced. During the April 6, 2026 call, defendants noted their position that the two scheduled depositions did not need to be cancelled and could proceed as contemplated and continued as needed based on subsequent document discovery.

[2] Plaintiff's counsel has acknowledged that at least some defendants are not properly named.

use of excessive force by two of the twelve individual defendants. Indeed, body-worn camera footage demonstrates that there was probable cause to arrest plaintiff, who has blond hair and was wearing a grey skateboard helmet, with a black shirt, black pants, and a black mask with a clear backpack, based on, *inter alia*, her remaining in the middle of the roadway for several minutes as dispersal warnings play and repeat out of a loudspeaker. *See* Excerpt of Sgt. Albergo's Body-Worn Camera Footage (Exhibit A). With respect to plaintiff's excessive force claim, plaintiff alleges that (1) "defendant Albergo approached plaintiff Hasnain and began violently grabbing her head," (2) "[t]he Hasnain defendants then grabbed Hasnain and slammed her to the ground," and (3) "[t]he Hasnain defendants . . . applied the handcuffs to [Hasnain] excessively tightly." *See* ECF No. 24, at ¶¶ 11, 12, 16. However, body-worn camera footage demonstrates that only defendant Rubino pulled plaintiff to the ground and handcuffed plaintiff. *See* Excerpt of Sgt. Rubino's Body-Worn Camera Footage (Exhibit B); Excerpt of Sgt. Livingston's Body-Worn Camera Footage (Exhibit C).Therefore, plaintiff's excessive force claim relates to only two defendants: Sgt. Albergo and Sgt. Rubino.

Disciplinary Records

Back in March of 2025 , defendants produced Civilian Complaint Review Board ("CCRB") histories and Central Personnel Indices for all twelve of the individually named defendants and, right before plaintiff filed her April 6, 2026 letter to the Court, defendants produced to plaintiff NYPD Internal Affairs Bureau ("IAB") resumes for all twelve of the individual defendants,[3] to the extent that they reflect allegations of misconduct that are similar in nature to the specific claims pled in the Amended Complaint or that relate to allegations of false statements, credibility, or truthfulness made within the last ten years prior to this Incident, which defendants respectfully submit is consistent with the prevailing case law in this district and the local civil rules.

However, plaintiff further seeks the full underlying files for any and all allegations of misconduct, regardless of disposition, for all twelve defendants. Defendants contend that plaintiff's request is unduly burdensome and not proportional to the needs of the case. In total, plaintiff is demanding the search, retrieval, review, redaction and production of **over 125 files**. As plaintiff's counsel is well aware, a single disciplinary file can exceed 1,000 pages, and many include numerous audio and video recordings. In addition, these files necessarily include private and sensitive information concerning non-parties as well as oftentimes information sealed by operation of law (i.e., N.Y. C.P.L. § 160.50, HIPAA).

On the other hand, in light of the objective video evidence, defendants respectfully propose the production of certain documents, such as investigation closing reports, which would sufficiently detail the allegations made, the investigation conducted and the result reached, regarding certain allegations made against defendants Albergo and Rubino; specifically those related to the use of force and that specifically relate to truthfulness, for the ten years prior to the Incident. Even with that limitation, defendants would be required to search, retrieve, review, redact and produce documents pertaining to over 15 investigations. However, defendants respectfully

---

[3] Defendants never said they would be producing IAB resumes for only two defendants. Defendants further indicated that they would be producing IAB resumes shortly, which they did. Nor did defendants ever say they would produce only two individuals for depositions. Indeed, nine defendant depositions have been scheduled thus far.

submit that such a production would be proportional to the needs of the case, and would more appropriately account for "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit," Fed. R. Civ. P. 26(b)(1), as opposed to plaintiff's overly broad, unduly burdensome request for all files in their entirety for all defendants. Such a production would also be consistent with "secur[ing] the just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1.

Training Materials

In her April 6, 2026 letter, plaintiff incorrectly relayed defendants' position with respect to producing training materials. I informed plaintiff that defendants would produce materials regarding certain trainings specifically related to the use of force taken by defendants Albergo and Rubino in the ten years prior to the alleged incident. Plaintiff, on the other hand, appears to be seeking training materials regarding all trainings received by all twelve individual defendants at any time, including at the Police Academy, regarding an array of different topics. Like plaintiff's request for disciplinary records, this request is also unduly burdensome and not proportional to the needs of the case. By way of example, the twelve individual defendants have participated in **over five thousand** trainings, and that number does not even include any training from their six months at the Police Academy. Defendants respectfully submit that their proposal, which still includes training materials regarding over ten trainings related to the use of force, is more appropriately tailored to the needs of the case.

Policy Documents

The parties have not fully met and conferred concerning plaintiff's request for policy documents. Defendants believe that the parties may be able to reach common ground with respect to this request and avoid a dispute and, therefore, respectfully request an additional opportunity to meet and confer with plaintiff's counsel before addressing this request further with the Court.

Text Messages and Communications by Defendants

During the March 26, 2026 court conference, the Court ordered defendants to investigate whether the individually named defendants had undisclosed text messages or communications regarding the incident, and to disclose any such communications on a rolling basis, in advance of each deposition. Defendants complied by informing plaintiff that no such communications exist for the first two deponents, who had been scheduled to be deposed this week. Defendants intend to comply with the Court's Order with respect to all other individual defendants who are deposed. To the extent that plaintiff now also requests that defendants conduct searches of text messages of an unknown number of non-parties, defendants object to such request as it constitutes a speculative fishing expedition and is unduly burdensome and not proportional to the needs of the case.

Plaintiff's Supplemental Responses

Plaintiff has thus far ignored defendants' repeated requests for the supplemental responses that were promised by February 17, 2026, now nearly two months ago. See ECF No. 70-3, at 4, 11, 12, 17, 28, 30. This includes information concerning plaintiff's alleged economic damages and releases for employment records and tax returns (which pertain to plaintiff's alleged unspecified loss of income claim). It is also not clear that defendants have medical releases for all of the medical providers from whom plaintiff has sought treatment regarding alleged injuries.

Thank you for your consideration herein.

Respectfully submitted,

*/s/Jonathan Hutchinson*
Jonathan Hutchinson
*Senior Counsel*
Special Federal Litigation Division

Encls.

cc:    **VIA ECF**
       All counsel of record

4