

August 14, 2026

Hon. Jennifer L. Rochon, U.S.D.J.
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007

By Electronic Filing.

> **Re:    Hasnain v. City of New York, et al., 24-cv-06221 (JLR)**

Dear Judge Rochon:

I am co-counsel for Plaintiff Anees Hasnain in this matter. I write, pursuant to the Court's Individual Rule § 2(E), seeking discovery relief. Specifically, Plaintiff is (1) seeking to enforce the Court's Order at ECF No. 77 with a date certain for production of the deployment text thread for the police action at issue and is (2) asking the Court to direct Defendants to show cause why sanctions should not issue under Rule 37[1] for Defendants' failure to produce the thread months ago when ordered, in light of Defendants' unwillingness to date to provide any explanation for how a search that failed to find the thread — because it did not actually involve searching the *City's* records — was diligent. In light of the lengthy background here, Plaintiff asks the Court to excuse this overlength letter, and notes that the actual discussion below is just over one page.

As noted below, this motion is made because of the impending discovery end date, and the fact that depositions continue without the text thread, where that thread would likely provide necessary context and questions for all depositions. *See, e.g., Rodriguez v. City Of New York*, 21-cv-10815, ECF No. 107-1 (SDNY) (deployment text threads for a protest at Mott Haven, before a particularly brutal enforcement action, where an SRG captain refers to assaulting protesters as "play," is told by a report to "kick their ass," and says "LETS HAVE FUN" referring to the enforcement action, where officers were caught on BWC later saying "that was fun!").

## Background

By way of background, as the Court likely recalls, after months where Defendants failed to produce discovery at all, Defendants produced discovery that largely failed to state what they were withholding and why. *See generally,* ECF No. 67. Even after a conference and an order to produce,

---

[1] It is not 100% clear this is not a spoliation issue — and that was the frame it the parties discussed it in for some time. However, the issue as it appears now is that Defendants' search consisted entirely of asking officers who had returned relevant phones to the department if they personally had the thread — and never asking a single question about what happened to the phones, or disclosing to Plaintiff that Defendants (1) knew the thread existed but (2) Defendants believed it had been lost.



Defendants failed to produce documents in advance of depositions in the manner the Court ordered. *See* ECF No. 72. After that second motion, the Court entered a detailed order directing prompt production of, among other things:

> "[i]n addition to all relevant text messages and communications sent or received by [named] Defendants…, the deployment text message thread that was issued in connection with the protest at issue in this case, if it exist[,] … by April 24, 2026."

ECF No. 77 at 2. Defendants sought and received five extensions of time to comply with ECF No. 77. *See* ECF Nos 81, 83, 95, 87, and 91. In response to the Order, Defendants served a series of letters, rather than updating their formal discovery responses. The seven letters do not disclose whether anything is being withheld or whether there is any assertion it does not exists — they only note what *is* being produced. Accordingly, July 7, 2026 came and went without production of the "deployment text message thread" (ECF No. 77) or any notice Defendants were not producing it. That is, Defendants only served letters stating what it was they *were* producing — not any statement of what they were not.

Thus, in preparing for depositions, Plaintiff discovered this and a number of other documents were not produced by the Court's deadline. Accordingly, starting on July 8, Plaintiff sent emails following up on those missing documents.[2] For example, Plaintiff began by asking why there was no video of Plaintiff in the transport van. Ex. 1 at 27. Defendants' counsel said "I have not seen BWC of plaintiff's transport." *Id.* at 26. But the simple clarification question, "[c]an you clarify whether that's you saying the City's position is that these two categories do not exist or whether you're just saying your client has not given them to you?" immediately led to production of the missing videos. *Id.* at 25-26. No explanation was offered for why Defendants violated the Court's deadline for these videos.

As relevant here, on July 13, after reviewing all productions and comparing them against the Court's order, Plaintiff served a list of missing documents including, "We did not receive any text messages, including a deployment thread," noting, "this seems wrong." *Id.* at 15-16. Defendants' sole response was:

> "I've requested these items from my clients and have not identified any texts regarding plaintiff or the incident."

*Id.* at 14. Nothing in Defendants' response suggested that there *was* a text message thread that had been "identified" but was lost; instead, it suggested Defendants' position was that there was never any text thread: The implicit "I" in "*I* have not identified any texts…" suggests that the NYPD gave counsel every document and no deficiency existed.

Accordingly, the deposition of Defendant Amaya proceeded on July 15. During that deposition, however, Defendant Amaya confirmed a text thread (1) existed; and (2) a phone with that

---

[2] A true copy of the relevant email thread, since it contains the only thing that resembles a formal discovery response on these issues, is attached as **Exhibit 1** as required by the Local Rules.



Page 2 of 6

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com



text thread was returned to the City, so Defendant Amaya did not have it.[3]  Defendant Amaya further testified that "it was general policy and practice to have a text message thread with sergeants and above to coordinate working on the event" when there was a mass protest type event.  Ex. 2 at 62-63.  Indeed, she testified that was "still policy and practice."  *Id.*  She also confirmed that she was visible on screen in certain body camera footage sending messages to that text thread.  Last, and most importantly, she confirmed that she got a new phone in 2023, and the phone that had the relevant thread on it was "returned []to the department" — and that NYPD policy ***does not*** include making back ups of any data on phones.  *Id.* at 59.

Thus, Plaintiff followed up the same day, asking:

"Please confirm what efforts have been made (e.g., what custodians have been asked for their phones) to find the thread.  Please also confirm NYPD's destruction and back up policies for a phone that has been returned to the Department, like DI Amaya's was in mid-2023. If you are not willing to provide that information, please provide a date to meet and confer this week -- we do want to get this issue moving given it will be important for all depositions."

Ex. 1 at 19-20.  After no response at all, Plaintiff followed up again on July 20.  Rather than responding with a date to meet or substantive information, counsel said "The SRG supervisors I've spoken to are no longer in possession of the text thread" and noted he was trying to identify any other supervisors.  Ex. 1 at 18.  Critically, no comment was offered about efforts to figure out ***what happened to the phone or phones returned to the Department*** and Defendants did not respond to the request to meet and confer.  Plaintiff followed up substantially to that effect.  *Id.* at 16-18.  When that did not receive any response, Plaintiff followed up ***again*** on July 22.  Counsel responded agreeing to a meet and confer, but saying the "follow up questions are premature."  *Id.* at 16.

At the meet and confer on July 24, the parties reached an impasse.  During the meeting, Defendants' counsel appeared to admit no search had ever been done outside of asking individual likely participants in the thread for a copy.  That is, despite the testimony that phones were, at the end of their life, "returned []to the department" (Ex. 2 at 59), it appears counsel ***had never asked NYPD data personnel what happens to those phones***.

Defendants' counsel also, for personal reasons, was out of the office the week of July 27, and asked for until August 3 to get back to the office and look at whatever the results of the NYPD's efforts were.  Accordingly, Defendants agreed to "get back to [Plaintiffs] sometime the week of August 3, 2026 on whether [Defendants] are able to find the text messages from [officers]" and would "look into whether phones returned to the department were backed up, imaged, or otherwise preserved as a way of getting the actual text messages."  Ex. 1 at 13.  To stave off motion practice, Defendants also agreed that "if and only if [they] cannot find the actual text messages, [they] will produce whatever [their] good faith view of what courts generally require a party to produce once there is evidence that some document or document has been destroyed or lost."  *Id.*  Defendants agreed explicitly to provide preservation related information if they could not find the text messages.  Ex. 1 at 12.

---

[3] A true copy of relevant excerpts of Defendant Amaya's deposition is attached as **Exhibit 2**.



Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



However, the weeks of July 27, August 3, and August 10 have now both passed without any substantive change.   On August 4, counsel was apparently "still waiting on information from NYPD regarding the text thread itself as well as the preservation of data from the NYPD cell phones."  Ex. 1 at 9.  During the post-deposition meet and confer about Defendants' instructions not to answer questions during the deposition last week, Plaintiff reiterated the need to get answers on this issue and promptly.  At Defendants' request yet again, Plaintiff held off on this motion and sent a reminder the morning of August 10 that the motion was coming.  Ex. 1 at 7.[4]

Later on August 10, Defendants they "***may*** have located the phone that DI Amaya had on the date of the incident."  Ex. 1 at 5 (emphasis added).  Despite follow up, Defendants still have not provided a date certain by which the thread will be produced — or expressly confirmed what it is they found or why the search the Court ordered months ago did not include wherever they "may have" located the phone.  Three depositions are scheduled next week for which the thread is necessary context, yet Defendants will neither produce the thread nor commit to bringing back witnesses.  Ex. 1 at 1-3.  The only substantive update is that counsel "understand[s NYPPD] expect[s] to complete the search of the phone by next week," with no date, and no commitment to a production date.

During both the meet and confer and in recent emails, Plaintiff has been clear the reason she feels the need to make a motion is the schedule:  The Court has been very, very clear it does not want to extend the discovery schedule unless absolutely necessary.  If Defendants were willing to ask the Court to move the schedule, Plaintiff agreed to hold off on the motion while the Court considered extending the schedule.  But Defendants have not made that motion — and have not even explained whether they expect to produce the text thread during the discovery period, if at all.

So, as of now, Defendants (1) have not produced the text thread the Court ordered and (2) have not explained in any way why their attempts to comply with ECF No. 77 did not include whatever basic search apparently ""may have located the phone that DI Amaya had on the date of the incident." Ex. 1 at 5.  With the end of discovery barely more than a month away — and having already waited a full month since Defendant Amaya's deposition — Plaintiff is filing this motion in an abundance of caution.

### Discussion

If the thread is ***not*** gone, Defendants must account for why they failed to produce it when ordered explicitly to do so.  *See, e.g.,* Fed. R. Civ. P. 37(b)(2)(A).  And sanctions for disobeying a discovery order are mandatory — though their scope beyond fees is discretionary.  *See, e.g.,* Fed. R. Civ. P. 37(b)(2)(C).  Defendants' counsel's apparent admission that the search did not include the ***City's*** records systems, but only talking to individuals unlikely to still have the same phones they did in 2021 is an admission that no diligent search was ever performed.

---

[4] Defendants' response in thread falsely says "plaintiff has not served a document request or interrogatory for the documents and information sought" as to spoliation."  Ex. 1 at 7.  Plaintiffs' requests, as discussed at the meet and confer at length before counsel sent this email, explicitly seek information about the search, what happened to the document, retention schedules, and the like "[i]f any responsive document has been lost, destroyed, or is otherwise unavailable."  ECF No. 67-1 at 2-3 (¶¶ 7(a)-(e)).

COHEN&GREEN                                                                                                    Page 4 of 6

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



"When parties and/or their counsel fail in their duty to conduct proper searches of ESI, sanctions may be appropriate, even where the misconduct involves late disclosure, as opposed to spoliation." *Nycomed US Inc. v Glenmark Generics Ltd.*, 2010 US Dist LEXIS 82014, at *9 (EDNY Aug. 11, 2010). Failures to perform reasonable searches in discovery can lead to quite serious sanctions. *See, e.g., Kannan v Apple Inc.,* 2020 US Dist LEXIS 252620, at *27 (ND Cal Sep. 21, 2020) (adverse inference and jury instructed "The Court has determined that Mr. Kannan did not search all locations as he was required to do. In particular, he did not search his Gmail account or all folders on his Apple-issued laptop").

The analysis requires the Court to look at "(1) the explanation for the failure to disclose; (2) the importance of the withheld evidence; (3) the prejudice suffered by the opposing party absent severe sanctions; and (4) the possibility of a continuance." *Nycomed*, 2010 US Dist LEXIS 82014, at *13. Nycomed resulted in "the imposition on Glenmark of a compensatory fine of $100,000 payable to Nycomed to cover a portion of its costs, and an additional monetary fine of $25,000 payable to the Clerk of the Court" because of a failure to conduct reasonable searches and an "inability to justify" the failures in search methodology. *Id.* at *37.

But to do the Rule 37(b)(2) analysis, the Court needs information — and to provide that information and the legal implications of it to the Court, Plaintiff needs it in turn. Defendants were ordered to produce the text thread specifically on April 10, 2026 — and it was requested on September 18, 2025. Yet, nearly a year after the request, Defendants still cannot even commit to a date certain to produce the document — and have not explained how the five extensions they received on ECF No. 77 did not allow them time to do the basic, diligent search they have apparently now performed. Moreover, Defendants have delayed nearly a month after a deposition showed their claim that they "have not identified any texts regarding plaintiff or the incident" was at ***best*** semantic game playing[5] around the work "identified," and at worst, outright deception. Ex. 1 at 14.

To address the more immediate problem, the Court should set a final date — in very short order — by which Defendants must produce the thread. Defendants have had a month since the deposition made absolutely clear to counsel that his client did not conduct a reasonable search — and seemingly suggested counsel did not ask reasonable follow up questions in supervising that search. Still more vague timeframes are incompatible with discovery closing next month. To address the larger problem, the Court should order Defendants to show cause why sanctions should not issue under Rule 37, and to provide an explanation, under oath, of (1) exactly what searches were conducted

---

[5] During the meet and confer, Defendants' counsel claimed he did not note the document was missing becuase it was impossible to "identify" a document that had been destroyed, notwithstanding that the text messages appear in body camera footage. That position appears to be inconsistent with the Local Civil Rule definition in Loc. Civ. R. 26.3(c)(4), which does not seem to require a document to still exist for it to be identifiable.



Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com



and when and (2) why the search that ultimately found the thread was **not** performed until long after the deadline the Court set.[6]

Respectfully submitted,

/s/
_____

J. Remy Green
*Honorific/Pronouns: Mx., they/their/them*
**Cohen&Green P.L.L.C.**
*Attorneys for Plaintiff*
1639 Centre St., Suite 216
Ridgewood, New York 11385

cc:
All relevant parties by ECF.

---

[6] If the Court takes this path and Plaintiff ultimately believes further discovery is necessary before responding, she will meet and confer with Defendants and make a motion if necessary. A 30(b)(6) deposition, with a relevant topic, has been noticed for later this month.

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com