UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

ANEES HASNAIN AND LUIS MEJIA,          **CONFIDENTIAL PORTIONS**

        Plaintiffs,

   v.                                           Case No.:

THE CITY OF NEW YORK, et al.,                   24-cv-6221

        Defendants.

_____

                        DEPOSITION

_____


WITNESS:                DEPUTY INSPECTOR ANGELICA AMAYA

DATE:                   Wednesday, July 15, 2026

START TIME:             10:05 a.m., ET

END TIME:               12:48 p.m., ET

REMOTE LOCATION:        Remote Legal platform

PROCEEDINGS OFFICER:    Gina Nilio, CER-2150

JOB NO.:                51849




                CONFIDENTIAL PORTIONS

A P P E A R A N C E S


COHEN & GREEN, PLLC

1639 Centre Street, Suite 216

Ridgewood, New York 11385

By:  REMY GREEN, ESQUIRE

     REGINA YU, ESQUIRE

        remy@femmelaw.com

        regina@femmelaw.com

Appearing for Plaintiffs


THE CITY OF NEW YORK LAW DEPARTMENT

100 Church Street

New York, New York 10007

By:  JONATHAN HUTCHINSON, ESQUIRE

        jmhutchinson@law.nyc.gov

Appearing for Defendants



ALSO PRESENT:

JAHNAVI JANAKIRAM, Summer Law Student at Cohen &

Green, PLLC (Observer)

CARLIN BRITO, Paralegal at Cohen & Green,

PLLC (Observer)

INDEX OF TESTIMONY

EXAMINATION OF DEPUTY INSPECTOR ANGELICA AMAYA:     PAGE

By Mx. Green                                              10

By Mr. Hutchinson                                        118

By Mx. Green                                             122

By Mr. Hutchinson                                        129

By Mx. Green                                             129

By Mr. Hutchinson                                        130

INDEX OF EXHIBITS

(available for download)

| EXHIBIT | DESCRIPTION | PAGE |
|---------|-------------|------|
| 1 | Officer History of Angelica Amaya - CONFIDENTIAL | 33 |
| 2 | Activity Log Report of Angelica Amaya | 68 |
| 3 | 29-minute-46-second body cam video | 86 |
| 4 | 31-minute-28-second body cam video | 108 |

                         I N D E X   O F

                  C O N F I D E N T I A L   P O R T I O N S


DESCRIPTION                                      PAGE    LINE

Confidential Portion 1 - Begin                    34      12

Confidential Portion 1 - End                      37      23

A    Year?  I know I definitely got a new phone November of last year.

Q    November of last year?

A    Yeah.

Q    So that's 2025?

A    Right.

Q    To the best of your recollection, up until November of 2025, were you using the same phone as the one from 2021?

A    No.  I had a different phone because I had -- I had problems with that other phone that I had with the -- that I had used in the demonstration, I have had problems with that phone, like it kept shutting on and off on me.

Q    Okay.  So when did -- when did you get a new phone -- when was the first time you got a new phone after 2021?

A    I would say 2023.

Q    2023.  Okay.

A    Yeah.

Q    Would it be late 2023, early 2023, something else?

A    Probably middle.

Q    Middle?

A    Yeah.

Q    Okay.  And when you got that new phone in 2023, did you throw out your phone on your own?  Did you return it to the department?  Something else?

A    I returned it to the department.

Q    Okay.  Did you have any backups of that phone, you know, on a department computer or something like that?

MR. HUTCHINSON:  Objection.

You can answer, if you know.

THE WITNESS:  No.

BY MX. GREEN:

Q    No.  In terms of NYPD policy, or your training, are you trained to make backups of your phone?

A    No.

Q    Okay.  Do you know what would have happened to your phone after you returned it to the department in the middle of 2023?

MR. HUTCHINSON:  Objection.

You can answer, if you can.

THE WITNESS:  No.

BY MX. GREEN:

Q    Okay.  In terms of that text thread that we were talking about, who else would have been on that text thread?

A    The supervisors that were working with me that

day.

Q    Okay.  And supervisor means what?  Captain and above?  Lieutenant and above?

A    A sergeant and a lieutenant.

Q    Sergeant.  Sorry.  I didn't let you finish.  I apologize.

A    No.  It's fine.

Q    Could you just say that again?

A    Sergeant and lieutenant.

Q    Sergeant and lieutenant.  So it would be sergeant and lieutenant, but you were a captain and you were on the thread, so it would be sergeant, lieutenant, and captain.  Sergeant, lieutenant, captain, and deputy inspector.  Just Sergeant and above?

MR. HUTCHINSON:  Objection.

You can answer.

THE WITNESS:  It would -- it would be whomever is working like with me that day as a supervisor.

BY MX. GREEN:

Q    Okay.  And, I guess, I'm just trying to figure out what "supervisor" means in this context.

A    Okay.

Q    So is supervisor determined by what rank somebody is or by what duties they're assigned that day?

A    What rank they are.

Q    What rank?  Okay.  And so is it fair to say that anyone who is working that -- right, like, you're not going to have people who aren't working this protest, but whoever was sergeant and above working that protest would be on the thread?

A    Yes.

Q    Okay.  And do you remember specifically any of the people who were working as supervisors that day? It's fine if you don't.

A    I don't.

Q    Okay.  And to the best of your understanding, the reason you could not specifically find the text messages is because they were lost when you returned the phone to the department in 2023.

MR. HUTCHINSON:  Objection.

You can answer if you know why the text couldn't be located.

THE WITNESS:  All I know is I returned the phone and I didn't have those text messages anymore.

BY MX. GREEN:

Q    Got it.  They would have been on the phone you returned and you didn't have them after you returned it. Fair?

MR. HUTCHINSON:  Objection.

You can answer, if you know.

THE WITNESS:  I don't know.

BY MX. GREEN:

Q    But -- well, you sent them on that phone, correct?

A    Yes.

Q    And you didn't specifically delete them on that phone before you returned it, did you?

A    No.

Q    So they would have been on the phone when you returned it?

MR. HUTCHINSON:  Objection.

You can answer if you know.

THE WITNESS:  Yes.

BY MX. GREEN:

Q    Okay.  All right.  And then let me just ask, is it -- so as of 2021, is it fair to say that it was the general policy to have a thread with sergeants and above to coordinate working on the pone -- I'm sorry.  Let me just rephrase that because I did a bad job of asking that question.

Is it fair to say that as of 2021, when you were working an event like this one, there would -- it was general policy and practice to have a text message thread with sergeants and above to coordinate working on

the event?

                MR. HUTCHINSON:  Objection.

                You can answer.

                THE WITNESS:  Yes.

BY MX. GREEN:

     Q    Is that still policy and practice?

     A    Yes.

     Q    Okay.  So when you've worked other mass events since then, you've similarly sent text messages on a text thread?

     A    Yes.

     Q    Fair enough.  Okay.  I'm going to now ask some questions related to the incident itself and your duties there.  So up until September 13, 2021, had you ever had patrol duties in the area of this protest, which is around Fifth Avenue in front of the Met?

     A    No.

     Q    Had you ever generally been to the area in front of the Met?

     A    No.

     Q    Okay.  So on September 13, 2021, this question is going to sound obvious but, was responding to this location part of your regular assignment, or were you sent there specifically because of the demonstration?

                MR. HUTCHINSON:  Objection.

You can answer if you can.

THE WITNESS:  If I was there, it was because I was sent specifically.

BY MX. GREEN:

Q   Okay.  I mean, is it fair to say you were there?

A   Yes.

Q   Okay.  And so based on your other answers, is it fair to say you're not particularly familiar with that general location?

A   No.  I'm not particularly familiar.

Q   You're not particularly familiar.  Thank you. Is it fair to say that on the date of the incident, the conditions and the location with respect to pedestrian and vehicular traffic would be different than an ordinary day, that is, a day that wasn't the Met Gala?

A   Yes.

MR. HUTCHINSON:  Objection.  Objection.

You can answer.

THE WITNESS:  Yes.

BY MX. GREEN:

Q   And up until September 13, 2021, had you ever been assigned or instructed to respond to a Met Gala event before?

A   No.