THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, N.Y. 10007

**STEVEN BANKS**
*Corporation Counsel*

**JONATHAN HUTCHINSON**
*Senior Counsel*
Tel.: (212) 356-2410
Fax: (212) 356-3509
jhutchin@law.nyc.gov

August 26, 2026

**VIA ECF**
Honorable Jennifer L. Rochon
United States District Court for the Southern District of New York

Re: Anees Hasnain v. The City of New York et. al., 24 Civ. 6221 (JLR)

Your Honor:

I am a Senior Counsel in the Office of Steven Banks, Corporation Counsel of the City of New York, and the attorney representing the defendants in the above-referenced matter. Defendants write in response to plaintiff's August 14, 2026 letter motion "seeking to enforce the Court's Order at ECF No. 77" and requesting that the Court issue an Order to Show Cause for "why sanctions should not issue under Rule 37." See ECF No. 95. Defendants respectfully request that the Court deny plaintiff's motion in its entirety. As plaintiff herself concedes, there is currently no dispute over the production of the deployment text thread pertaining to the incident and there is no issue ripe for Court intervention. The parties have been conferring on plaintiff's discovery demands in a productive manner and defendants expect that any disputes will be resolved well before the close of fact discovery, with no prejudice to plaintiff. Indeed, the text messages at the heart of plaintiff's August 14, 2026 letter have been located and were produced to plaintiff today, on August 26, 2026. Additionally, defendants have continued to work collaboratively with plaintiff to resolve deficiencies with her own responses to defendants' discovery demands, made over a year ago, without involving the Court and while complying with the Court's Individual Rule 2(E). Thus, plaintiff's motion should be denied.

By way of background, during the April 10, 2026 Court conference, the parties discussed defendants' obligations with regard to the search and production of certain text messages sent and received by the defendants at length. The Court explicitly ordered defendants to investigate whether any responsive text messages, including a "deployment thread," could be identified and disclosed, by investigating whether any of the defendants were in possession of the thread.

Accordingly, following the conference, the undersigned continued investigating whether any relevant text messages or a deployment thread existed, pertaining to the protest on September 13, 2021, and whether they could be located and produced. I spoke with the commanding officer on scene, defendant Angelica Amaya, who did not recall whether there was a deployment thread for this particular protest, but informed me that, if there was, it would have been a text thread or e-mail chain exchanged by Strategic Response Group ("SRG") 1 supervisors. Defendant Amaya informed me that she was no longer in possession of text messages from 2021, that she had no responsive e-mails, that she had turned in the phone that was assigned to her in 2021 around 2023, and that she did not back up the data on the phone, since such was not required by NYPD policy. I then identified two other SRG supervisors who were on duty at the time of the September 13, 2021 protest, defendants Livingston and Schutz, who both stated that they too were no longer in possession of text messages from 2021, that they had turned in the phones they were assigned in 2021, and that they had not backed up any data when turning in the phones. No other SRG

supervisors could be identified from body-worn camera footage recorded during the September 13, 2021 protest or from available NYPD documentation.

Upon information and belief, the NYPD's practice regarding the retention of data on the job phones of its members has evolved since 2021. On some occasions, officers are required to back up the data on their phones when surrendering them, for example when an officer has an open criminal matter requiring that information on the phones be preserved. On other occasions, the phone is reassigned to another member of service and "wiped." Based on my preliminary investigation, I reasonably concluded that any deployment thread, if it existed, had not been retained.

On July 14, 2026, the undersigned again informed plaintiff, accurately, that I had not identified any text messages pertaining to the plaintiff or the incident. On July 15, 2026, plaintiff deposed defendant Amaya. During the deposition, plaintiff showed defendant Amaya an excerpt from her body-worn camera footage recorded on September 13, 2021, depicting defendant Amaya texting what appeared to be a group chat. Defendant Amaya testified that she was texting on a chat that included SRG supervisors who were working on the date of the September 13, 2021 protest, regarding that protest. See ECF No. 95-2 at 59:22-60:19. Defendant Amaya specified that those supervisors included lieutenants. Id. Based on that testimony, I requested additional documentation from the NYPD in an attempt to identify the lieutenant or lieutenants who may have been on the text thread.

Following the deposition, plaintiff demanded information regarding NYPD's data retention policies. The parties met and conferred on plaintiff's request on July 24, 2026 and I agreed to provide additional information regarding the NYPD preservation and retention policies in effect in 2023, when defendant Amaya returned her phone, should the text thread at issue not be located. I also informed plaintiff that I was continuing to investigate whether the text thread itself could be located and produced, given defendant Amaya's testimony that a lieutenant or lieutenants may have been on the text chain.

Since July 24, 2026, I have been in communication with the NYPD regarding what preservation and retention policies applied to defendant Amaya's phone at the time she surrendered it. During the course of those conversations, however, I was informed that defendant Amaya's phone had been located in storage, information that I immediately passed along to plaintiff. Today, on August 25, 2026, I received screenshots of the text messages in question, from defendant Amaya's phone. After reviewing the materials and applying appropriate redactions to the private cell phone numbers of the individuals on the text message group chat, I produced the text messages to plaintiff.

During the Court conference on April 10, 2026, the Court also ordered that, if any responsive materials were not disclosed in advance of depositions, the parties could decide whether to reschedule the depositions or hold them open should new information come to light thereafter. Following the deposition of defendant Amaya, plaintiff *chose* to continue with the depositions of defendant Echavarria, defendant Albergo, and defendant Suazo, with defendant Castillo scheduled for Friday, August 21, 2026. Moreover, there is no reason to believe that any of the defendants, aside from defendants Amaya, Livingston, and Schutz, would have been privy to the deployment

thread, and plaintiff is free to question any of the defendants about orders they received before or during the September 13, 2021 protest. Plaintiff has articulated no prejudice suffered as a result of the outstanding deployment thread and her motion for sanctions is without merit and made in bad faith.

In her motion for sanctions, plaintiff mentions, in passing, the "importance" of the discovery in question, which, again, defendants have agreed to produce if located. However, at bottom, plaintiff's letter concerns deployment text messages, which have no bearing on plaintiff's claims, whereas, here, plaintiff alleges that she was injured during an unlawful arrest which was entirely captured on officers' body-worn camera footage and bystanders' cell phone footage. Moreover, plaintiff has been free to question all of the defendants about orders that they received prior to deploying to the protest, even though those orders are also not relevant to the question of whether plaintiff suffered violations of her constitutional rights.

Contrary to the tenor of plaintiff's August 14, 2026 letter, since the Court's Order of April 10, 2026, defendants have been producing discovery and making themselves available for depositions at a rapid pace. Plaintiff, on the other hand, has produced a bare-bones set of disclosures that seem to focus on physical injuries that she allegedly sustained in another case (*Hasnain v. City of New York, et al.*, Index No. 157094/2025), with no employment records or releases, despite the fact that she claims substantial economic losses as a result of defendants' acts and omissions. Following plaintiff's deposition on July 1 and July 23, 2026, I requested that plaintiff produce thirty-three (33) discrete subsets of discoverable materials, likely consisting of hundreds or thousands of pages of documents, the majority of which should have been produced in response to defendants' initial discovery demands long ago. See Exhibit A. Some of these materials, such as employment records, were ordered to be produced by the Court on April 10, 2026. To date, plaintiff has produced no employment records or releases, with the exception of an incomplete set of W2s. Instead, plaintiff requested that defendants re-send releases which were served on September 19, 2025.

Given the sheer breadth of discoverable information that was not disclosed in response to defendants' interrogatories and document requests, it is clear that counsel did not adequately consult with their client before serving those responses. Instead of moving for sanctions, however, out of professional courtesy and in the interest of moving the case forward in a productive and efficient manner, defendants simply ask the Court to hold plaintiff to the same standards of diligence and integrity as she asserts in her letter of August 14, 2026. Should plaintiff fail to produce those materials required by Rule 26(f), defendants reserve their right to seek Court intervention, after following the process outlined in Section 2(E) of the Court's Individual Rules.

Given the diligent search performed by the undersigned in attempting to locate the deployment thread, the ongoing conferral between the parties with regard to those efforts, and the eventual production of those text messages to plaintiff, plaintiff's preliminary motion for sanctions is wholly inappropriate. Should the Court be willing to entertain such a motion, defendants respectfully request an opportunity to brief the matter further.

Thank you for your consideration herein.

Respectfully submitted,

/s/ Jonathan Hutchinson
Jonathan Hutchinson
*Senior Counsel*
Special Federal Litigation Division

Encl.

cc: **VIA ECF**
All counsel of record