**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANEES HASNAIN,<br><br>*Plaintiff,*<br><br>- against -<br><br>THE CITY OF NEW YORK, NICHOLAS ALBERGO, ALLYSON ECHAVARRIA, GIANFRANCO RUBINO, ROBERT LIVINGSTON, ANGEL AMAYA, JASON CASTILLO, NICHOLAS NOTO, NICHOLAS BLAKE, JOHNNY SOLORZANO, DIANA SCHUTZ, FREDDY SUAZO, and BENJAMIN BEIRO,<br><br>*Defendants.* | 24-cv-6221 (JLR)<br><br>**NOTICE OF DEPOSITION** |

**PLEASE TAKE NOTICE** that pursuant to Rules 26 and 30, including specifically Rule 30(b)(6), of the Federal Rules of Civil Procedure, Plaintiff will take the deposition of Defendant the City of New York**,** via remote videoconference, beginning on August 27, 2026 at 9:00 am in the forenoon of that day and continuing from day to day thereafter, or upon such adjourned date as may be agreed upon, until concluded.

The deposition(s) shall take place before a notary public or other officer authorized by law to administer oaths by remote means (via videoconference) pursuant to Rule 30(b)(4) of the Federal Rules of Civil Procedure.

Pursuant to Rule 30(b)(3)(A) of the Federal Rules of Civil Procedure, the deposition(s) will be recorded by audiovisual and/or stenographic means by a court reporter.

The matters of examination will be the following:

## I. Uses of Force and Use of Force that can Cause Head Injuries:[1]

1. Uses of force at protests and on protesters between 2004 and 2022, including, but not limited to, forcible take downs, and use of force that caused head or brain injuries;
2. Uses of force outside the protest context that resulted in head or brain injuries, including, but not limited to, such uses of force involving forcible take downs, between 2004 and 2022;
3. Records, tracking, and other methods of information gathering and tracking the City uses concerning injuries of protesters at protests between 2004 and 2022, including, but not limited to, head or brain injuries, and other injuries caused by forcible take downs;
4. Records, tracking, and other methods of information gathering and tracking the City uses concerning civilian injuries caused by NYPD uses of force outside the protest context that resulted in head or brain injuries, including, but not limited to, such injuries arising from uses of force involving forcible take downs, between 2004 and 2022;
5. Investigations related to uses of force at protests including, but not limited to, such uses of force involving forcible take downs, between 2004 and 2022;
6. Investigations that in fact happened and the circumstances in which an investigation is supposed to happen related to civilian injuries caused by NYPD uses of force outside the protest context that resulted in head or brain injuries, including, but not limited to, such injuries arising from uses of force involving forcible take downs, between 2004 and 2022;
7. The City's reaction, monitoring, and attempts to address or mitigate substantiated allegations related to uses of force at protests between 2004 and 2022, including, but

[1] These headings, as well as any footnotes, are for convenience and organization only, and do not modify, expand, or limit the topics that fall underneath them.

not limited to, uses of force related to forcible take downs, as well as any discipline considered or imposed related to those substantiated allegations;

8. The City's reaction, monitoring, and attempts to address or mitigate risk or harm concerning substantiated allegations related civilian injuries caused by NYPD uses of force outside the protest context that resulted in head or brain injuries, including, but not limited to, such injuries arising from uses of force involving forcible take downs, between 2004 and 2022, as well as any discipline considered or imposed related to those substantiated allegations;
9. The City's reaction, monitoring, and attempts to address or mitigate risk or harm concerning lawsuits against the City of New York and/or NYPD members that were filed or resolved between 2004 and the present alleging excessive force related to (a) uses of force at protests, (b) forcible take downs, or (c) head or brain injuries caused by police uses of force, including, but not limited to, the nature and resolution of the claims at issue in such lawsuit;
10. Studies, reports, and analyses, including, but not limited to, risk management and Office of Management and Planning documents, created by or for the NYPD or any City agency related to (a) uses of force at protests, (b) forcible take downs, or (c) head or brain injuries caused by police use of force, created between 2004 and the present.
11. The NYPD's policies, practices, procedures, and training with respect to the following topics between 2004 and 2022:
    a. Use of force, including at protests;
    b. Use of force reporting, including in connection with protests;
    c. Use of force-related investigations, including in connection with protests;
    d. Discipline regarding use of force at protests;
    e. Use of forcible take downs at protests and on protesters;

f. Use of forcible take downs that are intended to involve or risk involving force to a person's head;

g. Techniques for using forcible take downs including, but not limited to, techniques to avoid risks of hitting or otherwise injuring a person's head;

h. Discipline for violating any policies and practices regarding forcible take downs that cause or are likely to cause head injuries;

i. The risks of impact to the head in using force;

j. Recognizing head injuries and symptoms of head injuries;

k. Treatment of and procedures for processing and treating prisoners or arrestees with head injuries; and

l. Treatment of and procedures for processing and treating prisoners or arrestees who fall unconscious.

12. Any changes in NYPD policies, practices, training, or procedures to address past issues with the use of force that caused head injuries.

**II. Document Preservation Related to the Deployment Text Thread:**

13. NYPD's generally — and SRG's specifically — practices for managing orders, coordination, and other methods of communication for a deployment at an event like a protest, including the deployment text thread.[2]

14. The City's and NYPD's policies, practices, and training for how individuals with NYPD-issued cell phones back up such phones.

15. The City's and NYPD's policies, practices, and training for how individuals with NYPD-issued cell phones are responsible (or not) for such phones.

16. The City's and NYPD's policies and practices for how individuals with NYPD-issued cell phones are to handle getting new phones, and the circumstances in which a new

[2] Captain Amaya testified that it "was general policy and practice to have a text message thread with sergeants and above to coordinate working on the event." Amaya Dep. Tr. at 62-63.

phone will be issued.

17. The City's and NYPD's policies and practices for how individuals with NYPD-issued cell phones are to handle (1) the data on a phone, (2) the physical phone itself, and (3) processes for backing up or transferring data on a phone when getting a new phone.
18. The City's and NYPD's policies, practices, and training for handling, disposing of, preserving, and otherwise any action taken with regard to an NYPD-issued phone returned to the City or the NYPD after an individual either receives a new phone or otherwise returns a phone (for example, because the individual has left their job).
19. The specific handling, current location, disposition of, and any efforts to preserve the data of — along with the dates of any such events — every phone that had a copy of the deployment text thread for the Protest at issue in this case.
20. The City's and NYPD's policies, practices, and training for preservation and deletion of data backed up from any NYPD-issued cell phone.
21. The actual search conducted for the deployment text thread, including what efforts were made to locate the thread, when those efforts were made, what efforts were not made, and if the thread is ultimately located, what efforts resulted in locating the thread.
22. The City's and NYPD policies, practices, and training concerning searching for text messages in discovery.

Since this is a deposition notice pursuant to Fed. R. Civ. P. 30(b)(6), the City shall designate and produce one or more employees, agents or representatives who is or are most knowledgeable on the matters set forth above, and set forth for each person designated and produced the matter(s) on which they will testify.

Although this deposition is being noticed pursuant to Fed. R. Civ. P. 30(b)(6), the matters of inquiry may include any other matters permitted under Fed. R. Civ. P. Rules 26 and 30

and any other authorized procedures.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants are required to produce, by electronic delivery, in advance of any given deposition, any and all materials in any form they may have related in any way to the subject matter of that deposition.

Dated: August 11, 2026
Brooklyn, New York

**GIDEON ORION OLIVER**

___________________________
277 Broadway, Suite 1501
New York, NY 10007
t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com

**COHEN&GREEN P.L.L.C.**

By: ______________________
Elena L. Cohen
J. Remy Green
Regina Yu

1639 Centre Street, Suite 216
Ridgewood (Queens), NY 11385
t: (929) 888-9480
f: (929) 888-9457
e: elena@femmelaw.com
remy@femmelaw.com
regina@femmelaw.com

**BELDOCK LEVINE & HOFFMAN LLP**

By: ______________________________
David B. Rankin
99 Park Avenue, PH/26th Floor
New York, New York 10016
(212) 277-5825
drankin@blhny.com