COHEN & GREEN

October 5, 2026

Hon. Jennifer L. Rochon, U.S.D.J.
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007

By Electronic Filing.

**Re: Hasnain v. City of New York, et al., 24-cv-06221 (JLR)**

Dear Judge Rochon:

I am co-counsel for Plaintiff Anees Hasnain in this matter. I write to oppose Defendants' belated bifurcation motion that seeks essentially a protective order prohibiting any 30(b)(6) deposition in the alternative.

To start, though Defendants note that the "the parties met and conferred regarding the Notice" (ECF No. 104 at 1), they omit (1) that Defendants came to the meet and confer completely unprepared to discuss any topic they would agree to; and (2) made the motion with requests to confer on what topics Defendants ***would*** agree to outstanding. Defendants never made any counterproposal. Accordingly, while Defendants argue certain topics are overbroad, the remedy they seek — a total bar on 30(b)(6) testimony — has little connection to those arguments, because Defendants never seriously engaged Rule 30(b)(6)'s mandatory "confer[ral] in good faith about the matters for examination."

**I. Defendants' Belated Motion to Bifurcate is Without Merit.**

Defendants' bifurcation motion is really an application to modify the scheduling order. *See, e.g., Guadalupe v. City of N.Y.*, 2016 U.S. Dist. LEXIS 19839, at *4 (S.D.N.Y. Feb. 15, 2016). The Court has issued many scheduling orders to date, and they have been quite clear that it "may not be modified or the dates herein extended, except by further Order of the Court for good cause shown." ECF No. 103 at 5; *see also, e.g.,* ECF No. 48 at 4 (same from August 2025). Defendants do not even attempt to, let alone succeed at, showing good cause to alter the scheduling order, and accordingly, the motion should be denied:

> "Yet, the City has advanced no reason why it was unable to identify the supposed advantages of bifurcation at or soon after the time that the scheduling order was entered. It is thus far too late in the day to seek to restructure the discovery program in this action."

*Guadalupe*, 2016 U.S. Dist. LEXIS 19839, at *2. Indeed, the current motion is not the first time Defendants have demanded the case be bifurcated. At the very start of discovery, more than a year ago, Defendants stated, without qualification, "Defendants will move to bifurcate discovery relating to plaintiffs' *Monell* claims." ECF No. 45 at 3. Then, after Defendants failure to produce any discovery, the change of counsel, and the motion practice around that, Defendants again hinted at

such a motion. *See* ECF No. 70 at 3.[1] And shortly after that letter, the Court held a sort of omnibus conference on the discovery issues plaguing the case, emphasizing — among other things — the Defendants' counsel could not simply treat causes of action as dismissed simply because he did not personally believe they had merit. *See, e.g.,* 2026-04-10 Tr. at 25:13-19 (THE COURT: "I'm going to tell you now that that's not going to be enough because you can't unilaterally determine that less defendants are at play in a case where defendants are named and the names are provided by the defendant and they haven't been dismissed from the case. Nor can you circumscribe this case to only be an excessive force case when it is not just an excessive force case.").

At the same conference, the parties and the Court discussed documents specifically in terms of relevance to the live *Monell* claims as part of what the Court ultimately ordered produced. *See, e.g., id.* at 46-50. Yet, nowhere in the lengthy omnibus conference did the City press for bifurcation. And then, despite threatening it over several months, the City never made a motion to bifurcate. Instead, the City waited until the very end of the discovery period — and silently but necessarily suggests the Court should completely rework the discovery schedule to accommodate a second, bifurcated phase. Accordingly, the City's failure to even attempt a good cause showing — or even address its failure to make the completely generic motion until now — is fatal.

Moreover, on its own merits, the motion fails because it does not really engage with the fairly wide split about bifurcation. Most of the cases Defendants cite are older, and dates matter because qualified immunity doctrine has developed quite a bit since the 1990's: It has become clear that "[i]t does not follow, however, that the plaintiff must obtain a *judgment* against the individual tortfeasors in order to establish the liability of the municipality." *See generally, Askins v. Doe*, 727 F. 3d 248, 253–54 (2d Cir. 2013) (emphasis in original). That is, because a municipality does not enjoy qualified immunity, unless individual defendants waive their right to argue the rights at issue were not clearly established, the more common route to dismissal if the individual Defendants win on summary judgment would leave all *Monell* claims intact — and ultimately impose much ***greater*** burdens on the Court. That is precisely what bifurcation nominally seeks to avoid. So, while some more modern cases quote pre-*Askins* language, as the City knows (but does not cite), there is a significant wave of decisions denying the City's motions because there is no longer a guarantee of efficiency, because of defenses the City's co-defendants usually chose to assert. *See, e.g., Fleming v. City of N.Y.,* 2023 U.S. Dist. LEXIS 22560, at *6 (S.D.N.Y. Feb. 9, 2023) (noting split and discussing reasoning) *Galarza v. City of N.Y.*, 2025 U.S. Dist. LEXIS 3217, at *53 (S.D.N.Y. Jan. 6, 2025) (noting split).

Likewise, Defendants' declaration that they "anticipate making a fully dispositive motion for summary judgment following the close of discovery, based in large part on video depicting the alleged incident" (ECF No. 104 at 2) is simply a replay of the arguments the Court already rejected:

[1] "With respect to item (v), the NYPD Patrol Guide, which contains NYPD guidelines and policies, including with respect to the issuance of summonses, arrests and the use of force, is publicly available, as defendants pointed out in their responses to plaintiff's discovery demands. Should plaintiff be seeking additional *Monell* discovery (which plaintiff did not specify in the instant motion to compel or during the parties' subsequent meet and confer), defendants respectfully request the opportunity to further meet and confer with plaintiff regarding such additional discovery and/or regarding a possible application to bifurcate *Monell* discovery."

"you can't unilaterally determine that" liability is not "at play in a case" where the claims "haven't been dismissed from the case. Nor can you circumscribe this case to only be an excessive force case when it is not just an excessive force case." 2026-04-10 Tr. at 25:13-19. And the City has had no impediment to moving for summary judgment — it is available as soon as a case is filed. *See, e.g.,* Fed. R. Civ. P. 56, 2009 Committee Note. The City's failure to file such a motion over several years, if anything, emphasizes that the motion is weak. *See also,* n. 2, below.

**II. The Motion for a Protective Order is Premature and Without Merit.**

As noted above, Plaintiff is ***not*** standing on the notion that the City must produce a 30(b)(6) witness on precisely the topics noticed. Rather, consistent with the aim of the most recent amendments to 30(b)(6), Plaintiff anticipated a collaborative meet and confer about the best phrasing and the best way to narrow or clarify the initial draft of topics. However, the City arrived at the meet and confer with a baseline position that ***no*** 30(b)(6) was appropriate, no proposals at all to discuss, and sent its attorney with literally no authority to agree to anything.[2]

More, the City's arguments are not exactly keyed to the nature of the claims here. For example, it complains mightily about the timespan of the notice — saying it is too broad because it covers the 2004 Republican National Convention. But the well-pled *Monell* claim here turns quite a bit on the City's failures in responding misconduct at the 2004 RNC, including promoting the then-Deputy Chief who "directed the use of force and mass arrests without probable cause to subdue protesters at the 2004 RNC protest" and "stop[ping] creating [after action] reports altogether" after "some of th[ose] reports praised officers for using 'militarized tactics.'" *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 548 F. Supp. 3d 383, 405-06 (S.D.N.Y. 2021). If the City has proposals on how to avoid a witness "be[ing] required to memorize large amounts of data or facts that could be produced as written discovery," Plaintiff is very happy to engage on that. ECF No. 104 at 2. In this way, Defendants misunderstand, even after discussion on this point at the meet and confer, the goal of Topics like 3, 4, 5, 6, 9, 10, and 12, among others. These seek to get at what documents cannot: How, if at all, the City has learned from past protests. And indeed, the City in the past has produced 30(b)(6) witnesses that testified that the City ***does not*** learn from past protests. If that is true, then there is ***no*** burden to prepare on these topics. For example, if there have never been any "changes in NYPD policies, practices, training, or procedures to address past issues with the use of force that caused head injuries," there is no burden at all to prepare on that topic. ECF No. 24 ¶ 94 Likewise, Plaintiff would be fine obviating certain topics with Requests to Admit.

In sum, Plaintiff is happy to confer further — and believes that the parties can reach an agreement once the Court is clear that ***some*** 30(b)(6) testimony will be permitted.

---

[2] Indeed, even proposals Plaintiff suggested that counsel said sounded "reasonable" needed to be taken back, and ultimately never received any response at all — confirming the dispute here is not about the scope of the specific topics, but about having 30(b)(6) testimony at all. And absent from the City's motion is what the heart of their issue at the meet and confer was: Because counsel personally believes no forcible takedown was used, he is unwilling to prepare a witness on forcible takedown policies. But this argument is without basis in law — and ignores that a City witness took a look at a particular still from the video and agreed that Plaintiff would not have been able to get airborne about three feet in the air and completely horizontal without a forcible takedown. Albergo Tr. at 126:17-18 ("It looks like she's being taken to the ground").

Respectfully submitted,

/s/

J. Remy Green
*Honorific/Pronouns: Mx., they/their/them*
**Cohen&Green P.L.L.C.**
*Attorneys for Plaintiff*
1639 Centre St., Suite 216
Ridgewood, New York 11385

cc:
All relevant parties by ECF.